# UNITED STATES DISTRICT COURT

for the

Eastern District of Missouri

| | |
|---|---|
| **In the Matter of the Search of** ) <br> 1205 Chaparrall Creek Drive, Hazelwood, Missouri 63042, hereinafter ) <br> referred to as **Subject Property**, within the Eastern District of ) <br> Missouri, is more fully described as a two story, multi-family ) <br> apartment building located at 1205 Chaparrall Creek Drive. The ) <br> apartment building is on the north side of the street facing south. The ) <br> apartment is constructed of tan siding with red trim, a grey roof, olive ) <br> railings on porch, olive chimney, and has a red front door. The main ) <br> access door to the apartment is on the main level with stairs leading up ) <br> to the apartment located on the second floor. The front door is red and ) <br> faces south. The numbers "1205" are affixed to the right of the door ) <br> and are black in color. | Case No. 4:18 MJ 6270 PLC |

## APPLICATION FOR A SEARCH WARRANT

I,   Aaron Ackland   , a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

1205 Chaparrall Creek Drive, Hazelwood, Missouri 63042, more fully described above.

located in the   EASTERN   District of   MISSOURI   , there is now concealed

see "List", marked as Exhibit "A".

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

✓ evidence of a crime;

✓ contraband, fruits of crime, or other items illegally possessed;

✓ property designed for use, intended for use, or used in committing a crime;

❏ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 21, U.S.C., §§ 841(a)(1), 843(b), 846 <br> Title 21, U.S.C., §§ 1956, 1957 | Conspiracy to possess with intent to distribute controlled substance(s); money laundering |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE.

✓ Continued on the attached sheet.

❏ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

AARON ACKLAND, Special Agent
FBI

*Printed name and title*

**Sworn to before me and signed in my presence.**

Date:   August 2, 2018

*Judge's signature*

City and State:   St. Louis, MO

Hon. Patricia L. Cohen, U.S. Magistrate Judge
*Printed name and title*
SAUSA: Angie E. Danis

**"NO KNOCK" ENTRY IS AUTHORIZED**

## I.   AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Aaron M. Ackland, being duly sworn, depose and state as follows:

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI"), United States Department of Justice.  I have been employed with the FBI since April, 2004, and have been assigned to the St. Louis Field Division, Safe Streets Task Force since July, 2011.  In connection with my official FBI duties, I investigate criminal violations of the Controlled Substances Act.  I have received specialized training in the enforcement of federal narcotics laws, and I have been involved in all aspects of narcotics trafficking investigations, including (a) the debriefing of defendants, witnesses, and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, and of the laundering and concealing of proceeds from drug trafficking; (b) surveillance; and (c) analysis of documentary and physical evidence.  I have also received training and participated in investigations involving the interception of both wire communications and electronic communications.  Finally, I have testified in grand jury proceedings for violations of federal narcotics laws.  Based on my training and experience as an FBI Special Agent, I am familiar with the ways in which narcotics dealers conduct their drug-related business, including, but not limited to, their methods of importing and distributing narcotics; their use of telephones, and their use of numerical codes and code words to identify themselves, the nature of the communication and/or to conduct their transactions; and their concealment of drug proceeds in real and personal property as well as legitimate businesses.

2.      I am an "investigative or law enforcement officer" of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and am

1

empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18, United States Code.

3. I have, through training and experience, become familiar with and utilized all normal methods of investigation including, but not limited to, visual surveillance, interviewing witnesses, the use of search and arrest warrants, the use of confidential sources, the use of pen registers, the utilization of undercover agents and the use of court authorized wiretaps. I am also familiar with methods of searching locations where narcotics and/or narcotic proceeds may be found. I have been involved in multiple drug investigations and have been involved in the arrest of numerous individuals for narcotics related crimes.

4. Presently, I am part of a team of experienced law enforcement Agents/Officers who have been investigating the criminal activities of a narcotic enterprise that has been identified as operating in violation of the following: distribution and possession of a controlled substance with intent to distribute, in violation of Title 21, United States Code, Section 841(a)(1); unlawful use of a communication facility, in violation of Title 21, United States Code, Section 843(b); conspiracy and attempt to possess with intent to distribute and to distribute controlled substance, in violation of Title 21 United States Code, Section 846; and laundering of monetary instruments, in violation of Title 18, United States Code, Sections 1956 and 1957 (hereinafter collectively referred to as the "Subject Offenses"). The investigation reflects that the enterprise is comprised primarily of persons associated in fact and who largely are friends and associates of Lewis J. BROWN (BROWN). It is the investigative team's opinion as experienced investigators, investigating narcotics trafficking that there exists probable cause to believe that evidence

will be found in violation(s) of Title 21, U.S.C., Sections 841(a)(1), 843(b), 846, money laundering and conspiracy to do the same in violation of Title 18, U.S.C., Sections 1956 and 1957.

5.   The statements contained in this affidavit are based in part on information learned through interviews, review of police arrest records, confidential sources, analysis of telephone toll records, pen register records, surveillance, and reports of Agents of the FBI, Officers of the St. Louis County Police Department (SLCPD), Officers of the McAlester Police Department, Officers of the Missouri Highway Patrol (MHP), and Officers of the Pulaski County Sheriff's Department, and on my education, training, and experience as a Special Agent.   Since this affidavit is being submitted for the limited purpose of securing authorization for the acquisition of a search warrant for the **Subject Property**, I have not included each and every fact known to me concerning this investigation.   I have set forth only the facts I believe are necessary to establish the necessary foundation for securing authorization for establishing probable cause for a search warrant for the **Subject Property.**

## II.    LOCATION FOR WHICH SEARCH WARRANT IS SOUGHT

6.   This affidavit is submitted in support of an application for the issuance of a search warrant for a location in Hazelwood, Missouri, specifically: 1205 Chaparrall Creek Drive, Hazelwood, Missouri 63042, hereinafter referred to as **Subject Property,** within the Eastern District of Missouri. See attached photograph of the **Subject Property** marked as Exhibit "B."

7.   The property is more fully described as follows: a two story, multi-family apartment building located at 1205 Chaparrall Creek Drive. The apartment building is on

3

the north side of the street facing south. The apartment is constructed of tan siding with red trim, a grey roof, olive railings on porch, olive chimney, and has a red front door. The main access door to the apartment known and numbered as 1205 Chaparrall Creek Drive is on the main level with stairs leading up to the apartment located on the second floor. The front door is red and faces south. The numbers "1205" are affixed to the right of the door and are black in color. The apartment is known as and numbered as 1205 Chaparrall Creek Drive, Hazelwood MO 63042. The totality of the pending investigation indicates that this is one of the residences utilized by Lewis BROWN, and is being utilized by BROWN as a drug and drug proceeds stash location.

## III. MAIN SUBJECT OF INVESTIGATION

8. The main known Subject of this investigation discussed herein is further described as follows: BROWN is a male, born on

## IV.    DETAILS OF INVESTIGATION

9.    In October      members of the Federal Bureau of Investigation (FBI) and the St. Louis County Police Department (SLCPD) Multi-Jurisdictional Task Force debriefed a long-term, reliable confidential source, hereinafter CS#1[1], regarding Steven WILLIS.  CS#1 knows WILLIS as "Brandon", but positively identified him as Steven WILLIS from a booking photograph.  During the several years CS#1 has known WILLIS, CS#1 has known WILLIS to distribute user quantities of heroin in the St. Louis County area, but has also seen WILLIS in possession of ounce quantities of heroin.

10.    During the initial stages of the investigation into WILLIS, Investigators learned on November 15, 2017, a McAlester Police Department Officer observed a silver 2006 BMW 325i, with Missouri license plate "KM4D1S", speeding through McAlester, Oklahoma.  A law enforcement database check of Missouri license plate "KM4D1S" revealed it to be registered to Michael Dunn and Stephanie DUNN.  Once the BMW was stopped by law enforcement Officers, it was found to be driven by Michael DUNN, and occupied by WILLIS, BROWN and Jason HELMS.  DUNN advised the Officer, that the occupants of the BMW were returning to the St. Louis area after having visited in the Dallas area.  During the interaction with DUNN, the Officer observed the BMW to contain marijuana.  A subsequent search of the BMW revealed it to contain approximately eleven (11) total individually packaged baggies of marijuana, three (3) small baggies of heroin (field-tested positive for the presence of heroin), two (2) syringes,

---

1 CS#1 has proven reliable through independently corroborated information, some of which was verified through audio recordings.  Information provided by CS#1 has been utilized to obtain two state search warrants and one federal search warrant.  One state warrant resulted in the seizure of firearms and narcotics, and the subsequent securement of federal firearms charges.  The second state warrant resulted in securing state narcotics charges.  The federal search warrant resulted in the seizure of a firearm and narcotics.

and approximately $10,499 U.S. currency separated into four (4) bundles. Following the discovery of the aforementioned items of contraband, all four occupants of the BMW were arrested and held on local charges for possession of controlled substance. According to officials with the McAlester Police Department, all the occupants of the BMW were released from custody on November 19, 2017.

11. On November 30, 2017, based partially on the aforementioned traffic stop, the Honorable Nannette A. Baker, United States Magistrate Judge, Eastern District of Missouri, issued a tracking warrant for the BMW.

12. On December 6, 2017, pursuant to the aforementioned tracking warrant, a GPS device was successfully installed on the BMW. Continued monitoring of the GPS device on the BMW revealed it to have travelled to 24135 Sweet Lane, Waynesville, Missouri on December 6, 2017, December 7, 2017, and again on December 8, 2017. 24135 Sweet Lane, Waynesville, Missouri was the address provided by HELMS to the McAlester Police Department during his arrest on November 15, 2017, and is also the address utilized by HELMS on his Missouri driver's license.

13. On December 12, 2017, in an attempt by Investigators to determine the significance of the BMW's trips to Waynesville, Missouri, Investigators established surveillance at 24135 Sweet Lane, Waynesville, Missouri. During the surveillance, Investigators observed the BMW arrive at the residence, with BROWN as the driver. BROWN entered the residence, which was later identified by Investigators to also be occupied by HELMS. During an approximately one and one-half hour surveillance of the residence, Investigators observed several different vehicles arrive at the residence, and

6

several occupants of these vehicles entered, and then exited, the residence within a few minutes.

14.    On January 11, 2018, the Honorable Nannette A. Baker, United States Magistrate Judge, Eastern District of Missouri, issued the first extension of a tracking warrant for the BMW, and monitoring of its movement continued.

15.    On February 7, 2018, members of SLCPD and the FBI partnered with Investigators from the Missouri Highway Patrol (MHP) to conduct physical surveillance at 24135 Sweet Lane, Waynesville, Missouri.   During the course of the physical surveillance, several cars were again observed to stop momentarily at the residence, then depart.  MHP was able to effectuate a traffic stop on one of these vehicles, which was found to contain a user quantity of crack cocaine (field-tested positive for the presence of cocaine).  During the subsequent interview by MHP of the occupant of the vehicle, the occupant admitted to having obtained the crack cocaine from the trailer located at 24135 Sweet Lane, and that the narcotics contained within the trailer were supplied by "Bo" from the Chicago, Illinois area.   Based upon previous investigations by the FBI, Investigators know "Bo" to be an alias for Lewis BROWN.

16.   On February 9, 2018, based upon the investigation conducted up to that date, Officers with MHP were able to obtain a state search warrant in Pulaski County for 24135 Sweet Lane, Waynesville, Missouri, the residence of HELMS.

17.   On February 14, 2018, MHP, in conjunction with members of the FBI and SLCPD, executed the state search warrant at 24135 Sweet Lane, Waynesville, Missouri. The search warrant resulted in the seizure of two handguns, heroin, crack cocaine, methamphetamine, and prescription pills.

18.  In conjunction with the search at 24135 Sweet Lane, Investigators conducted

19.  On March 22, 2018, in an effort to further the investigation, Investigators executed a federal search warrant (issued by the Honorable Nannette A. Baker, United States Magistrate Judge, Eastern District of Missouri) at 969 Arbor Run Court, Manchester, Missouri, the residence of WILLIS.  During the course of the search warrant execution, WILLIS's Ford Mustang was located in the driveway, and WILLIS was found hiding in the garage area.  A subsequent search of the Mustang resulted in the seizure of a loaded Glock 27 .40 caliber semi-automatic handgun, and approximately 12.8 grams of cocaine.

20.  Later on March 22, 2018,

21.  On June 22, 2018, based upon the investigation at that point, the Honorable David D. Noce, United States Magistrate Judge, Eastern District of Missouri, issued a precision location warrant (PLW) for telephone number (314) 603-7651, utilized by BROWN.

22.  Monitoring by Investigators of the PLW on telephone number (314) 603-7651, showed its presence on almost a daily basis at the **Subject Property**.  On July 10, 2018, based upon information provided by the PLW on telephone number (314) 603-7651, Investigators established physical surveillance upon BROWN at a hotel in the St. Louis area.  Shortly after establishing physical, Investigators observed BROWN depart the hotel in a silver Chevrolet Malibu, registered to BROWN.  Continued surveillance of the Malibu showed it to arrive at the **Subject Property**, at which time BROWN entered the residence.  Minutes later, Lance BROWN (brother of Lewis BROWN) departed the **Subject Property** in the Malibu and briefly went to a local convenience store before returning to the **Subject Property**.

23.  Following the surveillance, Investigators obtained leasing documents for the **Subject Property**, and found it to been leased to Brittney THOMAS, believed by Investigators to be a girlfriend of Lance BROWN.

9

24.  Later in the month of July ▓▓▓▓ Detectives with SLCPD were contacted by a Confidential Source, hereinafter CS#2[2], who stated that subjects that he/she identified as "Trap" and "Bo" were selling Fentanyl and "Crack" Cocaine from the **subject property**. CS#2 was able to positively identify "Trap" from a photograph of Lance BROWN, and "Bo" from a photograph of Lewis BROWN.

25.  On July ▓▓▓▓ the investigative team met with CS#2 at a secure location in reference to CS#2 contacting BROWN for the purchase of Fentanyl and "Crack" Cocaine. CS#2 contacted BROWN via a recorded telephone call.  During this call and a subsequent call, BROWN instructed CS#2 to respond to the area of ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ in the general vicinity of the **Subject Property**.

26.  Before the transaction occurred, CS#2 was searched for narcotics, money, and/or weapons, which was met with negative results.  CS#2 was outfitted with an active audio recorder and transmitting device, then CS#2 departed the secure location and drove to the intersection of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ while under constant audio and visual surveillance.

27.  Upon arrival to the area, CS#2 contacted BROWN via a cellular telephone call. Surveillance teams set up on the **Subject Property** and saw BROWN exit the door to the **Subject Property**, and enter a black in color four-door, rental sport utility vehicle (SUV). While under constant surveillance, BROWN arrived to the location he (BROWN) instructed CS#2 to go to. Upon arrival, CS#2 exited his/her vehicle and entered the front passenger seat of BROWN's vehicle. After a short time, CS#2 exited BROWN's vehicle

---

2 CS#2 has proven reliable through independently corroborated information, some of which was verified through audio recordings and physical surveillance.  Information provided by CS#2 has been utilized to obtain one state search warrant which resulted in the seizure of narcotics, and a subsequent arrest. ▓▓▓

and entered his/her vehicle. A short time later while under constant surveillance CS#2 drove to the secure location. The investigative team observed BROWN drive back to the **Subject Property**. BROWN was observed exiting his SUV and enter the **Subject Property**.

28. Once back at the secure location, CS#2 handed the investigative team a clear plastic bag containing clear smaller plastic baggies, containing off-white powdery substance and off-white rock like substance. The off-white powdery substance field tested positive for the presence of Fentanyl, with an approximate weight of 31.3 grams. The off-white rock like substance field tested positive for the presence of Cocaine base, with an approximate weight of approximately 13.2 grams.

29. During the debrief of CS#2, investigators were advised by CS#2 that during the aforementioned exchange, BROWN informed CS#2 that when he/she ran out of product to contact him to "re-up", and that he (BROWN) had plenty left.

30. During previous debriefs of both cooperating subjects and confidential sources, BROWN has been described to regularly carry a firearm, and to have threatened individuals with said firearm. For the safety of the Officers executing this search warrant, it is requested this warrant be a "no knock warrant".

## V.    TRAINING AND EXPERIENCE

31.    The aforementioned facts support probable cause to believe that BROWN has a significant role in an ongoing, extensive heroin, cocaine, fentanyl, methamphetamine and marijuana conspiracy which generates proceeds. As part of my experience and training as a Special Agent and that of other special federal officers, special agents and police officers on the investigating team, we have accumulated

11

information and training in the areas of narcotics based economic crime.  I have had extensive experience, as have other members of the investigating team, in interviewing defendants, witnesses, informants and others who have experience in the gathering, spending, converting, transporting, distributing and concealing of proceeds of narcotics trafficking.  Based upon my and the investigating team's experience and our participation in other pending and completed controlled substances and/or financial investigations involving ongoing, extensive heroin distribution conspiracies involving large amounts of controlled substances and money, I know the following:

a.      It is common for drug dealers to secrete contraband, proceeds of drug sales, and records of drug transactions in their residence or other buildings under their control.

b.      Drug traffickers frequently keep near at hand, in their residence or other buildings under their control, paraphernalia for packaging, cutting, weighing and distributing of drugs.  These paraphernalia include, but are not limited to scales, plastic bags, and cutting agents.

c.      Drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, computer hard drives and disk records, money orders and other papers relating to the transportation, ordering, sale and distribution of controlled substances. Drug traffickers commonly "front" (provide drugs on consignment) controlled substances to their clients.  The aforementioned books, records, receipts, notes, ledgers, etc. are maintained where the drug traffickers have ready access to them, specifically in their residence or in other buildings under their control.

d.      Drug traffickers commonly maintain telephone bills, invoices, packaging, cellular batteries and/or charging devices, cancelled checks or receipts for telephone purchase/service; cellular and/or landline telephones; digital and/or alphanumeric text (two-way) pagers; computers capable of e-mail and/or chat-room communication, answering machines; address and/or telephone books and papers reflecting names, addresses, and/or telephone numbers of sources of supply, of customers, and/or evidencing association in fact with persons known to traffic in controlled substances or to facilitate such trafficking. These records are maintained where drug traffickers have ready access to them, specifically, in their residence or in other buildings under their control.

e.      Drug traffickers take or cause to be taken photographs of them, their associates, their property and their product. These traffickers frequently maintain these photographs in their residence or other buildings under their control.

f.      Persons involved in large-scale drug trafficking conceal in their residence or other buildings under their control large amounts of currency, precious metals, jewelry, and financial instruments, including, but not limited to, stocks and bonds, papers, titles, deeds and other documents reflecting ownership of vehicles and property utilized in the distribution of controlled substances or which are proceeds from the distribution of controlled substances.

g.      When drug traffickers amass large proceeds from the sale of drugs that the drug traffickers attempt to legitimize these profits. I know that to accomplish these goals, drug traffickers utilize financial institutions, including but not limited to, foreign and domestic banks and their attendant services, securities, cashier's checks,

money drafts, letters of credit, brokerage houses, real estate, shell corporations and business fronts. They maintain record of these transactions in their residence or other buildings under their control.

       h.      Evidence of occupancy and residence including, but not limited to utility and telephone bills, canceled envelopes, rental or lease agreements, and keys, is relevant evidence in narcotics prosecutions.

       i.      Drug traffickers frequently possess firearms and/or other weapons in their residence or other buildings under their control to protect their heroin and/or United States currency.

       j.      Heroin, fentanyl and cocaine are not commonly manufactured within the State of Missouri, and is not a major distribution point for drugs within the State of Missouri. It is common for drug traffickers to travel to major distribution centers to purchase drugs and/or to arrange for its distribution elsewhere in the United States. After purchasing drugs, these drug traffickers will transport or cause to be transported, drugs to the areas in which they will distribute the drugs. The methods of transportation include, but are not limited to, commercial airlines, private airlines, rental automobiles, private automobiles, and government and contract mail carriers. Records of their travel are frequently kept in their residence or other buildings under their control.

## VI.   CONCLUSION

32. Based upon my analysis and review of the preceding information, I believe that probable cause exists indicating violations of Title 21, United States Code, Sections 846 and 841(a)(1). Based upon the investigation by your affiant and other law enforcement officers, I believe that controlled substances, drug proceeds, and/or

documents evidencing participation in drug trafficking will be found at the locations indicated above.

33.   Based on the facts as construed by my training and experience and the training and experience of the investigative team, presented in the affidavit set forth, I believe that evidence as set forth in the attached "List", marked as Exhibit "A" is contained within the above listed location.

34.   I submit this affidavit in support of a search warrant for the **Subject Property** within the jurisdiction of the reviewing Court.  I have reviewed the description of this premise, and believe it to be an accurate, particularized description of the premise to be searched at the address.

## VII.   REQUEST FOR SEALING

35.   In view of the ongoing nature of the investigation, and the risk of harm to informants, to agents, and to the investigation which would exist should the information in this affidavit be prematurely disclosed, I respectfully request that this affidavit and associated records concerning these searches be sealed until further order of the Court.

_8/2/2018_

DATE

Aaron Ackland
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this _2_ day of August, 2018.

PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE
Eastern District of Missouri

**"List"**
**Exhibit "A"**

1.  Controlled Substances;

2.  Paraphernalia for packaging, cutting, weighing and distributing controlled substances, including, but not limited to, scales, baggies and spoons; and

3.  Books, records, receipts, notes, ledgers, computer hard-drives and disk records, and other papers relating to the transportation, ordering, purchasing and distribution of controlled substances and/or firearms;

4.  Telephone bills, invoices, packaging, cellular batteries and/or charging devices, cancelled checks or receipts for telephone purchase/service; cellular and/or landline telephones; digital and/or alphanumeric text (two-way) pagers; computers capable of e-mail and/or chat-room communication, answering machines; address and/or telephone books and papers reflecting names, addresses, and/or telephone numbers of sources of supply, of customers, and/or evidencing association with persons known to traffic in controlled substances or to facilitate such trafficking.

5.  Photographs, in particular photographs of co-conspirators, of assets, and/or of controlled substances.

6.  United States Currency, precious metals, jewelry, and financial instruments, including, but not limited to, stocks and bonds, papers, titles, deeds and other documents reflecting ownership of vehicles and property utilized in the distribution of controlled substances or which are proceeds from the distribution of controlled substances;

7.  Books, records, receipts, pay stubs, employment records, bank statements and records, money drafts, letters of credit, money order and cashier's checks receipts, passbooks, bank checks and other items evidencing the obtaining, secreting, transfer and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money;

8.  Papers, tickets, notes, schedules, receipts and other items relating to travel, including, but not limited to, travel to and from St. Louis, Missouri and elsewhere

9.  Indicia of occupancy, residency, rental and/or ownership of the vehicles and/or premises described above, including, but not limited to, utility and telephone bills, cancelled envelopes, rental or lease agreements and keys;

10. Firearms and/or weapons.



EXHIBIT "B"

AO 93 (Rev. 11/13)   Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the
Eastern District of Missouri

| | |
|---|---|
| In the Matter of the Search of )<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)* )<br>1205 Chaparrall Creek Drive, Hazelwood, Missouri 63042, )<br>hereinafter referred to as **Subject Property,** within the Eastern )<br>District of Missouri, is more fully described as a two story, )<br>multi-family apartment building located at 1205 Chaparrall )<br>Creek Drive. The apartment building is on the north side of the )<br>street facing south. The apartment is constructed of tan siding )<br>with red trim, a grey roof, olive railings on porch, olive )<br>chimney, and has a red front door. The main access door to the )<br>apartment is on the main level with stairs leading up to the )<br>apartment located on the second floor. The front door is red and )<br>faces south. The numbers "1205" are affixed to the right of the )<br>door and are black in color. ) | Case No. 4:18 MJ 6270 PLC |

## SEARCH AND SEIZURE WARRANT

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____EASTERN_____ District of _____MISSOURI_____ *(identify the person or describe the property to be searched and give its location)*:

1205 Chaparrall Creek Drive, Hazelwood, Missouri 63042, more fully described above.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

see "List", marked as Exhibit "A".

**YOU ARE COMMANDED** to execute this warrant on or before August 15, 2018_____ *(not to exceed 14 days)*
✓ in the daytime 6:00 a.m. to 10:00 p.m.   ❑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to Patricia L. Cohen_____.
*(United States Magistrate Judge)*

❑   Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
    ❑ for _____ days *(not to exceed 30)*   ❑ until, the facts justifying, the later specific date of _____.

Date and Time issued:   8/2/18   11:35 A.M.          _____
                                                                        *Judge's signature*

City and State:   ____St. Louis, MO____          Honorable Patricia L. Cohen, U.S. Magistrate Judge
                                                                    *Printed name and title*

**"NO KNOCK" ENTRY IS AUTHORIZED**

**"List"**
**Exhibit "A"**

1.   Controlled Substances;

2.   Paraphernalia for packaging, cutting, weighing and distributing controlled substances, including, but not limited to, scales, baggies and spoons; and

3.   Books, records, receipts, notes, ledgers, computer hard-drives and disk records, and other papers relating to the transportation, ordering, purchasing and distribution of controlled substances and/or firearms;

4.   Telephone bills, invoices, packaging, cellular batteries and/or charging devices, cancelled checks or receipts for telephone purchase/service; cellular and/or landline telephones; digital and/or alphanumeric text (two-way) pagers; computers capable of e-mail and/or chat-room communication, answering machines; address and/or telephone books and papers reflecting names, addresses, and/or telephone numbers of sources of supply, of customers, and/or evidencing association with persons known to traffic in controlled substances or to facilitate such trafficking.

5.   Photographs, in particular photographs of co-conspirators, of assets, and/or of controlled substances.

6.   United States Currency, precious metals, jewelry, and financial instruments, including, but not limited to, stocks and bonds, papers, titles, deeds and other documents reflecting ownership of vehicles and property utilized in the distribution of controlled substances or which are proceeds from the distribution of controlled substances;

7.   Books, records, receipts, pay stubs, employment records, bank statements and records, money drafts, letters of credit, money order and cashier's checks receipts, passbooks, bank checks and other items evidencing the obtaining, secreting, transfer and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money;

8.   Papers, tickets, notes, schedules, receipts and other items relating to travel, including, but not limited to, travel to and from St. Louis, Missouri and elsewhere

9.   Indicia of occupancy, residency, rental and/or ownership of the vehicles and/or premises described above, including, but not limited to, utility and telephone bills, cancelled envelopes, rental or lease agreements and keys;

10.  Firearms and/or weapons.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

IN THE MATTER OF THE SEARCH OF:      )
                                     )
1205 Chaparrall Creek Drive, Hazelwood,   )
Missouri 63042, hereinafter referred to as   )      No. 4:18 MJ 6270 PLC
**Subject Property,** within the Eastern District of   )
Missouri, is more fully described as a two story,   )      **FILED UNDER SEAL**
multi-family apartment building located at 1205   )
Chaparrall Creek Drive. The apartment building   )
is on the north side of the street facing south. The   )
apartment is constructed of tan siding with red   )
trim, a grey roof, olive railings on porch, olive   )
chimney, and has a red front door. The main   )
access door to the apartment is on the main level   )
with stairs leading up to the apartment located on   )
the second floor. The front door is red and faces   )
south. The numbers "1205" are affixed to the   )
right of the door and are black in color.      )

## MOTION FOR SEALING ORDER

COMES NOW the United States of America, by and through its attorneys, Jeffrey B.

Jensen, United States Attorney for the Eastern District of Missouri, and Angie E. Danis, Special

Assistant United States Attorney for said District, and moves this Court for an order directing that

the search warrant, along with its application, affidavit, and return, entered by this Court be sealed

until February 2, 2019, except for the limited purposes of providing same to defense counsel

pursuant to Rules 12 and 16 of the Federal Rules of Criminal Procedure.

In support of this Motion, the Government provides the following facts, establishing that

(a) the government has a compelling interest in sealing the documents in question which outweighs

the public's qualified First Amendment right of access to review those documents; and (b) no less

restrictive alternative to sealing is appropriate or practical:

Because this investigation is ongoing and its success would be jeopardized if the contents of the affidavit were made public, the Government requests that the affidavit and the accompanying search-warrant documents be sealed for the stated period of time.

WHEREFORE, for the reasons stated above, the Government respectfully requests that the search warrant, along with its application, affidavit, and return, be sealed until February 2, 2019.

Dated this __2nd__ day of August, 2018.

Respectfully submitted,

JEFFREY B. JENSEN
United States Attorney

ANGIE E. DANIS, #64805MO
Special Assistant United States Attorney

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

IN THE MATTER OF THE SEARCH OF: )
)
1205 Chaparrall Creek Drive, Hazelwood, )
Missouri 63042, hereinafter referred to as )
**Subject Property,** within the Eastern District of )
Missouri, is more fully described as a two story, )
multi-family apartment building located at 1205 )
Chaparrall Creek Drive. The apartment building )
is on the north side of the street facing south. The )
apartment is constructed of tan siding with red )
trim, a grey roof, olive railings on porch, olive )
chimney, and has a red front door. The main )
access door to the apartment is on the main level )
with stairs leading up to the apartment located on )
the second floor. The front door is red and faces )
south. The numbers "1205" are affixed to the )
the right of the door and are black in color. )

No. 4:18 MJ 6270 PLC

**FILED UNDER SEAL**

## ORDER

On motion of the United States of America, IT IS HEREBY ORDERED that the search

warrant, along with its application, affidavit, and return, and this Order issued thereto, be sealed

until February 2, 2019, except for the limited purposes of providing same to defendant counsel

pursuant to Rules 12 and 16 of the Federal Rules of Criminal Procedure.

This Order is based upon the sealed motion of the Government establishing that: (a) the

government has a compelling interest in sealing the documents in question which outweighs the

public's qualified First Amendment right of access to review those documents; and (b) no less

restrictive alternative to sealing is appropriate or practical.

PATRICIA L. COHEN
United States Magistrate Judge

Dated this ___2___ day of August, 2018.